MARY E. MORRIS, Administratrix, *vs.* JOSEPH W. PORTER.

Penobscot.   Opinion May 7, 1895.

*Probate.   Administrator.   Over payment.   Creditor.*

An administrator who, within the year allowed by statute, pays a creditor's claim in full, acting upon the honest belief that the estate is solvent, may, upon the estate proving actually insolvent, recover back the difference between the amount so paid and that pro rata share which the creditor would have been entitled to in common with all other general creditors. But the creditor who in good faith has received payment in full of his claim against an estate, should not be placed in a worse position, by reason of such payment, than those whose claims have not been paid and who have had an opportunity to present and prove the same before the commissioner.

In a suit by an administrator to recover back the difference between the amount so paid by him, and the amount that the creditor would be entitled to, as a dividend upon his claim, the burden is upon the administrator to show what that difference is. He can do this by introducing the decree of the judge of probate, ordering a dividend to be paid to creditors and especially that to be paid upon the claim of the creditor from whom the excess of payment is sought to be recovered. It is incumbent upon an administrator, at his peril, to have this dividend upon such creditor's claim determined by decree of the judge of probate. For this purpose, he may prove any claim so paid in his own name, being subrogated to the rights of the creditor whose claim has been fully paid.

Such an action by an administrator cannot be maintained until the amount of such dividend has been ascertained, and all matters pertaining thereto fully and finally adjudicated in the probate court.

ON REPORT.

This was an action of assumpsit to which the defendant pleaded the general issue, and also filed a brief statement of further defense.

Upon the opening of the case and after the reading of the pleadings, it was agreed that the case should be reported to the law court upon the writ and pleadings; and if the case stated in the defendant's brief statement would constitute a defense, in whole or in part, to the plaintiff's claim the case should stand for trial; if the facts stated, if true, constitute no defense to plaintiff's claim, judgment to be rendered for plaintiff.

The brief statement of the defendant is as follows: that on the 25th day of September, 1889, the plaintiff's intestate, Isaiah Morris, held a permit, and was preparing for a lumbering operation, to be carried on during the then next ensuing logging season. And on said 25th of September, 1889, the said Isaiah Morris came to him, the said defendant, and made a contract with him, under and by which the said defendant was to supply the said Morris in said lumbering operation. That the said defendant had known the said Morris for many years, had previously repeatedly supplied him in lumbering operations, and knew that he was the owner of real estate of the value of at least fifteen hundred dollars, and on said 25th day of September, 1889, the records in the registry of deeds for County of Penobscot, showed the title to said real estate still to be in said Isaiah Morris.

On said 25th day of September, 1889, the defendant having made said contract with said Morris, began to furnish said Morris with supplies for said lumbering operation, and thereafter up to the time of said Morris' death on the 18th of May, 1890, defendant continued to furnish said Morris with supplies and money for said operation to the amount of $7825.21, on which amount defendant was entitled under the terms of said contract with said Morris, to a commission of six per cent, amounting to $469.51, so that there was due to defendant from said Morris on the day of his death the sum of $8294.72.

Defendant entered into said contract with said Morris and supplied him with goods and money to the amount aforesaid, solely upon said Morris' personal credit, and did not take an assignment of the permit of said Morris, for the reason that said Morris, at the time of making said contract with the defendant, did not have his permit with him.

At the time of said Morris' death said logs were being driven to market, and it was absolutely necessary to save the property represented by the said logs, that they should be driven to market and the stumpage and lien claims thereon be paid ; as the logs, if left where they were at the time of said Morris death, and exposed to the claims of stumpage owners and laborers having liens, would have been sacrificed ; while, if driven to market, they were worth substantially all they had cost said Morris, which was practically what the defendant had advanced him in money and supplies, and in addition what it would cost to get said logs to market.

In said condition caused by the death of said Morris, under such circumstances, it seemed necessary that somebody should assume the responsibility of doing what was necessary to get said logs to market, and to sell the same ; and the defendant, after consultation with the judge of probate in and for said county, and negotiation and agreement with the plaintiff, then the widow of said Morris, and Charles Morris, son of the said plaintiff and her said intestate, who was engaged with his father in said operation, went on and did what was necessary to get said logs to market, becoming responsible to the men engaged in driving the logs for their pay, and paid all the claims upon said logs, including the stumpage and the cost and expenses of getting said logs to market.

The amount paid by said defendant after the death of said Morris, under the said agreement with the plaintiff and her son, amounted to $3622.97, being the amount credited by the plaintiff in her writ against the said defendant; and, in addition thereto, the sum of nine dollars paid to one W. H. Littlefield for labor on the logs.

The defendant sold said logs with the consent of the plaintiff and her said son, for the sum of $11,726.76, as alleged by said plaintiff in her said writ, and, at the time of said sale, there was due to defendant the amount advanced by him to said Isaiah Morris in his lifetime, with six per cent commission thereon, and the amount paid by him to free said logs from liens, and to get them to market, the sum of $11,911.97, and it was agreed

between the plaintiff and her said son and the defendant, that the defendant should be entitled to take in payment of what was due him the amount received from the logs.

During the summer of 1890 the plaintiff petitioned to be appointed administratrix upon the estate of her deceased husband, but the judge of probate within and for said County of Penobscot, stated that he did not regard her as a fit person to administer upon said estate unless all matters connected with said lumbering operation and the debt to defendant could be settled and adjusted and said lumbering operation to be so eliminated and not included in the settlement of the estate.

Whereupon, the defendant and the plaintiff, in the presence of the judge of probate, she being assisted by counsel, went over all the accounts and agreed upon a settlement, and then on the 6th day of August, 1890, at an adjournment of the July Term, 1890, of the probate court in and for said county, the plaintiff was appointed administratrix of the estate of Isaiah Morris, and subsequently, in the presence of the judge of probate and with his approval, settled with the defendant and gave him a receipt for the $11,726.76 received by him for the logs, and he gave her a receipt for $11,911.97 due him ; and all matters between the said plaintiff, in her said capacity, and the said defendant were then so settled and adjusted, and defendant claims that said settlement is final and conclusive between the parties and constitutes a full defense to this suit.

But if said settlement is to be disturbed, defendant claims that in addition to the amounts credited to him by the plaintiff in her said writ, he should be allowed the amount due him from the said Morris at the time of his decease, and the further sum of nine dollars paid to said Littlefield for labor on said logs, and that when said claims are allowed there is no balance due to said plaintiff in this suit.

And the defendant further says that, according to the papers filed in the probate court by the plaintiff in her said capacity, the estate of said Isaiah Morris was not and is not, as a matter of fact, insolvent, as she represented that there existed and charged herself with goods and chattels, independently of said

logs sold by the defendant, and rights and credits of the aggregate value of $1099.97, while all the claims which have been proved against the estate, the time for proving claims having expired, amount in the aggregate to only $796.97, leaving the balance of assets in her hands, over and above the amount of claims proved, of $303 ;— so that all the creditors can be paid in full, and there is no reason in justice or equity for disturbing the settlement made between the plaintiff in her said capacity and the said defendant.

Defendant further says that plaintiff claims that the said Isaiah Morris in his lifetime, to-wit on the 23d of September, 1889, made a gift of and conveyed to her all his real estate, and the records in the registry of deeds for said county show that such a deed was entered for record on the 27th day of September, 1889 ; and the plaintiff further claims that her said husband in his lifetime gave her the most valuable part of his goods and chattels, and defendant says that the plaintiff did not include in her inventory either said real estate or the goods and chattels which she claimed to have been given her.

Defendant claims that the said gift of real estate and goods and chattels cannot be held by the plaintiff as against him, a creditor, or as against other creditors whose claims existed before said alleged gifts were made ; and that said real estate should be applied in payment of the defendant's claims and all pre-existing indebtedness, and the application of said property, so alleged to have been given, to the payment of such debts would leave the assets of said estate far in excess of the claims of all other creditors.

*A. W. Weatherbee*, for plaintiff,
*F. A. Wilson, and C. F. Woodard* for defendant.

SITTING : EMERY, FOSTER, HASKELL, WHITEHOUSE, WISWELL, STROUT, JJ.

PETERS, C. J., did not sit.

WISWELL, J.   This case comes to the law court upon a report of the writ and the defendant's pleadings, with the stipulation that if the facts set up in the brief statement would constitute a

defense, in whole or in part, the case is to stand for trial; if not, judgment is to be rendered for the plaintiff.

These facts appear from the brief statement. Isaiah Morris, the plaintiff's intestate, died on the 18th of May, 1890. At the time of his death he was indebted to the defendant in the sum of $8294.72 for supplies, and commissions, furnished him by the defendant, during the preceding fall and winter while said intestate was carrying on a lumbering operation. At the time of Morris' death the logs were being driven to market, and in order to protect and save the property, to get the logs to market and to prevent the enforcement of lien claims by stumpage owners and laborers, with the consent of the widow, now the administratrix, and a son who was engaged with his father in the operation, the defendant made further advances to the amount of $3631.97, which paid all claims upon the logs and the expense of driving the same.

Subsequently, with the consent of the widow and son, before her appointment as administratrix, the defendant sold these logs, realizing from such sale the sum of $11,726.76. It further appears from the brief statement that, after her appointment as administratrix, the plaintiff and the defendant had a full settlement of all matters between him and the estate, in the presence and with the approval of the judge of probate, and after a full examination of the accounts by the plaintiff aided by her counsel. At this time there was in the hands of the defendant the sum of $11,726.76, the proceeds of the sale of the logs, and there was due him the sum of $11,926.69 for advances, supplies and commissions as above stated. By the terms of this settlement these two amounts were offset against each other, and each of the parties gave the other a receipt in full. In other words, the administratrix paid the defendant's claim, substantially in full, by the application to that purpose of the proceeds of the logs in the defendant's hands, which was accepted by the defendant in full satisfaction of the amount due him.

The plaintiff now seeks to recover back the amount so paid or applied, less the advances made by the defendant after the intestate's death.

It may be admitted that an administrator who, within the year allowed by statute, pays a creditor's claim in full, acting upon the honest belief that the estate is solvent, may, upon the estate proving actually insolvent, recover back the difference between the amount so paid and that pro rata share which the creditor would have been entitled to in common with all other general creditors. But this right of action is based upon the equitable doctrine that such creditor has received money, which in equity and in good conscience belongs to the estate, for the purpose of making a just and equal distribution among all the general creditors, which is the cardinal principle of the laws relating to the administration and settlement of decedents' estates.

The creditor who in good faith has received payment in full of his claim against an estate should certainly not be placed in a worse position by reason of such payment than those whose claims have not been paid and who have had an opportunity to present and prove the same before the commissioners. If an administrator could recover back the full amount paid under the above circumstances, it would leave the creditor, whose claim had once been paid in full, after the expiration of the time allowed to prove claims, entirely without remedy. This would not be just and equitable, but quite the reverse and to a very marked degree.

This question arose in *Walker* v. *Hill*, 17 Mass. 380, in which, after a full discussion of the principles involved, the court said : " The plaintiff will take judgment for the difference between the amount paid by him to the defendant, and the amount that would have been payable to him on the decree of the judge of probate for the distribution among the creditors, whose debts were allowed by the commissioners, with interest on the amount of their difference." To the same effect is *Heard, admx.* v. *Drake,* 4 Gray, 514.

An administrator cannot recover back the whole amount so paid but only the amount of the over-payment. The burden is upon the administrator to show what that difference is. He can do this by introducing the decree of the judge of probate ordering the dividend to be paid to creditors and especially that to be paid upon the claim originally of the creditor from whom the

excess of payment is sought to be recovered. It is incumbent upon an administrator, at his peril, to have this dividend upon such creditor's claim determined by decree of the judge of probate. It is a matter exclusively within the original jurisdiction of the probate court and cannot be determined in a common law court.

This is no great hardship upon an administrator who seeks to be relieved from his own mistake. He may prove any claim so paid in his own name, being subrogated to the rights of the creditor whose claim has been fully paid.

This course was adopted by the administrators in the two Massachusetts cases above cited, and either this, or some other course, must be pursued which will result in a decree of the probate court of the amount of the dividend on the claim that has been paid.

It is not the representation of insolvency which entitles an administrator to disturb a previously made settlement, and to recover any portion of the amount paid, but actual insolvency as shown after the commissioners have passed upon the claims presented, the acceptance of such report by the probate court, the settlement of the administrator's account showing the amount in his hands available for the payment of debts, and the decree ordering the payment of a dividend.

The defendant sets up in his brief statement that the estate is not actually insolvent, that the account of the administratrix shows that she charges herself with the sum of $1099.97, and that all of the claims allowed aggregate only $796.97. If the estate is not actually insolvent the plaintiff is not entitled to recover anything. It is further claimed in defense that the defendant's original claim has not been passed upon by the commissioners and that the time for presenting the same has expired. We have already seen that unless this has been done the action cannot be maintained.

What has already been said applies to the further contention of the defendant, set up in his brief statement, that the intestate, in his lifetime, made a conveyance and transfer of real and personal property to his wife, the present administratrix, which

was without consideration and void both as to then existing and subsequent creditors. This may be a pertinent inquiry upon the question of the amount of the estate in an administrator's hands, available for the payment of debts. But it is only after all such matters have been fully and finally adjudicated, and the amount of dividend that the creditor would be entitled to accurately ascertained, that such an action as this can be maintained.

In accordance with the terms of the report,

*The action is to stand for trial.*